IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| DEBORAH JOHNSON-GERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:17-cv-00016 |
| | ) |
| UNUM LIFE INSURANCE COMPANY | ) |
| OF AMERICA; and UNUM GROUP | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**[1]

COMES NOW the Plaintiff, Deborah Johnson-Gerry, and hereby brings this action against Unum Life Insurance Company of America and Unum Group Corporation ("Defendants") for violations of the Employee Retirement Income Security Act of 1974 in relation to an insurance policy issued to Maine Financial Institutions Employee Benefits Trust under which Plaintiff was an insured participant. In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through these attorneys:

---

[1]This document has been drafted by counsel for the Plaintiff on Plaintiff's behalf based on facts presented by Plaintiff but does not support the inference that Plaintiff has the knowledge necessary to understand the specific legal terminology used herein. Furthermore, this document is intended to provide notice of the claims supported by the facts set forth herein. It is not intended to be an exhaustive compilation of all facts or all legal claims supported by these facts.

# EXECUTIVE SUMMARY[2]

Plaintiff began working for the Maine Bankers' Association (formerly known as the Maine Association of Community Banks) in 1991 until she was terminated due to permanent disability in 2015. Plaintiff served as the Benefits Coordinator, and she was forced to begin working reduced hours on September 2, 2014. Eventually, she had to completely stop working on October 15, 2014. Plaintiff's boss described her as a valued member of the team that would hopefully be able to return to work, but her disabilities prevented that from ever happening.

Plaintiff suffers from Lyme disease, Post-Treatment Lyme Disease Syndrome, resulting cognitive impairment, arthritis, severe joint and tissue pain, swelling, blurry vision, chronic fatigue syndrome, vasovagal syncope, intestinal problems, multiple systemic infectious diseases syndrome (MSIDS), and autonomic dysreflexia. These problems collectively caused Plaintiff's condition to deteriorate to the point that she could no longer perform the high-level functions of her demanding position. Her attending physicians and workplace superior unanimously found limitations in her work capabilities, but Defendants disagreed and chose to deny her benefits based on an ability to perform a job with much lower requirements than Plaintiff's actual position.

---

[2] This Executive Summary is drafted by Plaintiff's counsel and its purpose is to provide as a convenience to the Court an overview of the dispute.

## PARTIES

1. The Defendant Unum Group Corporation exercised authority or control respecting the management or disposition of the plan assets, and is therefore, a "fiduciary" as that term is defined by 29 U.S.C. § 1002(21).

2. Furthermore, the Defendant Unum Group provides services to the plan at issue, and as such is a "party in interest" as that term is defined by 29 U.S.C. § 1002(14).

3. The Defendant Unum Group is, upon information and belief, a Delaware Corporation whose principal place of business is Chattanooga, Tennessee, who may be served with process by serving Corporation Service Company, 2908 Poston Avenye, Nashville, Tennessee 37203.

4. Defendant Unum Life Insurance Company of America is the entity that insured the Plan benefits in question.

5. Unum may be served with process by serving the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243.

## JURISDICTION AND VENUE

6. Jurisdiction and venue are proper in this district because Defendant Unum Group's principal place of business is Chattanooga, Tennessee, and Defendant Unum Group was responsible for the administration of the Plaintiff's claim for benefits. Therefore, a substantial part of the events or omissions giving rise to the Plaintiff's Complaint occurred in or around Chattanooga, Tennessee. Therefore, venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2) given that 'a

defendant resides or may be found' within the Eastern District of Tennessee.

7. Venue is further appropriate in that a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this District. Therefore, venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2) given that "the breach took place" within the Eastern District of Tennessee.

8. Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" as that term is defined within 29 U.S.C. § 1001, et. seq and The Plan "may be found" within this district.

## THE POLICY AT ISSUE

9. As part of Plaintiff's employment with the Maine Bankers' Association, Plaintiff was offered long-term disability (LTD) coverage in addition to life insurance and Accidental Death and Dismemberment (AD&D) coverage with life waiver of premium (LWOP) benefits through the Maine Financial Institutions Employee Benefits Trust Plan funded by a policy issued by Unum.

10. With respect to LTD benefits, "total disability" was defined as being "limited from performing the material and substantial duties of your regular occupation due to your sickness or injury;" and having "a 20% or more loss in your indexed monthly earnings due to the same sickness or injury."

11. With respect to LWOP for life insurance and AD&D benefits, "disability" is defined as "due to the same injury or sickness, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by training, education, or

4

experience."

12. The Plan is deemed "employee welfare benefit plan" as that term is defined in 29 U.S.C. § 1001, et. seq.

13. Plaintiff is a "participant" and a "beneficiary" in the employee welfare benefit as those terms are defined under 29 U.S.C. § 1001, et. seq.

14. Plaintiff is disabled under the terms of the employee welfare benefit plan.

15. Defendants' termination of Plaintiff's benefits was not and is not supported by substantial evidence.

## CLAIMS PROCESS

16. Plaintiff tested positive for Lyme under the IgM Western blot test on October 7, 2013, and March 23, 2015. It is unclear when she originally contracted Lyme disease, but it seems likely that it was as early 2000 and that there were subsequent reinfections.

17. On July 26, 2014, Plaintiff had to be rushed to the emergency room because she collapsed and lost consciousness with no detectable pulse.

18. On July 28, 2014, Lisa Bartley, FNP-BC, wrote a letter indicating that Plaintiff should not work until August 11, 2014.

19. Plaintiff was forced to begin working reduced hours on September 2, 2014, and her disability onset date was determined by Defendants to be August 18, 2014.

20. On September 10, 2014, Plaintiff's primary care physician, Dr. Sean McCloy, M.D., M.P.H., M.A., completed an attending physician statement indicating significant mental and physical impairments that only allowed part-time work.

21. On September 12, 2014, Dr. Scott Glocke, Plaintiff's chiropractor, opined that Plaintiff could not work more than 5-6 hours a day and that she required frequent breaks. This was due to spinal misalignments with associated dysponesis resulting in increasing inflammation, pain, tingling, and numbness.

22. On September 26, 2014, Plaintiff's massage therapist, Kevin Pennell, noted a significant deterioration in Plaintiff's condition and opined that she should refrain from working until February 2015 and that this return should only be for 16-20 hours a week.

23. On October 1, 2014, Dr. Glocke completed an Attending Physician Statement (APS) indicating that Plaintiff could not work due to severe pain and limitations of function.

24. On October 14, 2014, Dr. McCloy completed an APS indicating severe restrictions in Plaintiff's abilities and recommending that she cease working.

25. On October 31, 2014, Plaintiff's boss, Marcia Ferguson, noted Plaintiff's inability to work a full day and her deteriorating condition, which caused Plaintiff to become confused and exhausted.

26. On October 31, 2014, Lisa Bartley completed an APS indicating a total lack of work capacity and decreased concentration and cognitive functioning.

27. On February 4, 2015, Dr. McCloy opined that Plaintiff was permanently disabled due to chronic Lyme disease, MSIDS, Chronic Fatigue Syndrome, and Autonomic Dysreflexia and that this prevented her from performing her daily occupational tasks on a full-time basis. He further added that if Unum required

objective proof of her cognitive dysfunction, it should pay for a formal, independent neuropsychiatric examination by *a practitioner skilled in assessing chronic Lyme disease*.

28. Given the difficulties in treating and assessing Post-Treatment Lyme Disease Syndrome (a.k.a. chronic Lyme disease) and MSIDS, Plaintiff attempted a host of conventional and alternative remedies in treating her conditions. This including travel to Washington to attend holistic medicine retreats on two occasions.

29. On January 16, 2015, Unum employee Stavy Bennett, RN completed a paper review in which she incorrectly and unreasonably assumed that Plaintiff had discontinued care, that chronic or post-treatment Lyme disease is testable through the standard Lyme tests used to detect initial infections, and that Plaintiff had not been referred to cognitive testing. Further, Bennett incorrectly stated that making multiple posts requires spending "quite a bit of time on Facebook" and that Plaintiff's attempts to alleviate her symptoms through yoga, meditation, walking, and Qi Chong were inconsistent with her stated symptoms.

30. On January 19, 2015, Defendants indicated that it required additional time to process Plaintiff's claim and that it would begin paying her LTD claim under a reservation of rights with a payment effective date beginning November 16, 2014. Defendants continued to pay LTD under a reservation of rights until the denial of Plaintiff's claim. Defendants did not similarly waive Plaintiff's life insurance and AD&D premiums.

31. On February 17, 2015, Dr. Peter Kouros, D.O., essential found that all of the available medical opinions and evidence should be disregarded based upon his

7

purely paper review. Dr. Kouros ignored the diagnosis of chronic or Post-Treatment Lyme Disease Syndrome and merely found that Plaintiff's treatment should have eradicated the Lyme disease bacteria. He also sweepingly stated that there was an absence of evidence to support the treating physicians' opinions and opined that this absence of evidence somehow allowed him to affirmatively conclude that Plaintiff was capable of performing her occupational demands on a full-time basis.

32. On March 31, 2015, despite Dr. McCloy's recommendation that Plaintiff receive an independent neuropsychiatric examination from a practitioner skilled in assessing chronic Lyme disease and his offer to refer Plaintiff to such a physician, Defendants chose to have the IME conducted by Dr. Robert Riley, Psy.D. Dr. Riley found that Plaintiff was deficient in many areas but that this resulted in no significant cognitive limitations.

33. On April 24, 2015, Unum reviewer Steve Lucky noted that Unum had failed to obtain updated medical information beyond what was received in December 2014 and that payment under reservation of rights should reasonably be continued. Lucky detailed numerous steps that needed to be taken, only one of which was obtaining information from Plaintiff's opthamologist, Dr. Elkinson.

34. On May 1, 2015, Dr. Elkinson provided notes from Plaintiff's September 15, 2014 visit that indicated a blister in her right eye and the need for glasses.

35. On May 26, 2015, Unum called Plaintiff and discussed the difficulties of getting the recommended appointment with a rheumatologist due to her Lyme diagnosis. She indicated that she would let Unum know when she was able to do so.

8

36. On May 26, 2015, Dr. Joseph Sentef, M.D., completed a paper review for Unum and found that there was not enough evidence to support a Lyme diagnosis and that Plaintiff could perform sedentary work. Dr. Sentef made no mention of his opinion regarding Plaintiff's Post-Treatment Lyme Disease Syndrome, which does not appear to have any tests at this time.

37. Defendants denied Plaintiff's disability claim on May 29, 2015. The decision was based upon the findings of Drs. Kouros, Sentef, and Riley. It was also based on a conclusion that Plaintiff's test results did not comply with CDC guidelines for a positive Lyme result. The denial letter made no mention of Dr. McCloy's diagnosis of chronic or Post-Treatment Lyme Disease Syndrome or whether this condition would have triggered a positive test result. Defendants' decision also relied upon a self-serving assessment of Plaintiff's occupational requirements rather than the actual requirements described by Plaintiff and her employer. This also appears to be the first time Defendants mentioned providing the results of Dr. Riley's IME.

38. On June 8, 2015, Defendants denied Plaintiff's life insurance waiver of premium claim.

39. Plaintiff appealed the denials on August 24, 2015.

40. As part of her appeal, Plaintiff included evidence from her July 2, 2015 visit to a rheumatologist showing osteoarthritis, carpal tunnel syndrome, trigger fingers, and superimposed chronic pain syndrome. The resulting conclusion was that Plaintiff was unfit to resume her previous job.

41. Plaintiff also provided information from the chiropractor, Allan Sheen,

she visited during her time in Washington.

42. On September 23, 2015, Dr. Beth Schnars completed a paper review for Unum mirroring the previous opinions and stating that medical literature from the CDC, NIH, and IDSA did not support the diagnosis of chronic Lyme disease. Dr. Schnars did not discuss whether these tests were relevant to chronic or Post-Treatment Lyme Disease Syndrome.

43. On September 29, 2015, Defendants received a hip X-ray showing moderate osteoarthritis in Plaintiff's hip and advanced degenerative changes in her lower back.

44. On the same day, a Unum employee discouraged Plaintiff from submitting additional evidence regarding physical therapy and X-rays because any medical information or records occurring after November 15, 2014, were irrelevant to her condition during the applicable time period.

45. Plaintiff's appeals of her LTD and life insurance waiver of premium denials were denied on September 30, 2015.

46. The defendant that made the decision to deny benefits would pay any benefits due out of that same defendant's funds.

47. The defendant that made the decision to deny benefits was under a perpetual conflict of interest because the benefits would have been paid out of that same defendant's funds.

48. The defendant that made the decision to deny benefits allowed its concern over the funds to be paid to influence its decision making process.

49. The defendant that made the decision to deny benefits considered the applicability of ERISA in making said decision to deny benefits.

50. Since receiving the decision(s) on appeal, Plaintiff, through counsel, requested "relevant" documentation pursuant to 29 C.F.R. 2560.503-1(h)(2)(iii).

51. In responding to that request, Unum refused to produce a number of documents contrary to the foregoing regulation. For example, Unum:

> (a) refused to produce its claims manual which governed its administration of Plan benefits;
>
> (b) refused to produce documents exchanged with or generated in the course of claims administration by its vendors;
>
> (c) refused to produce documents relating to its bonus and incentive compensation program applicable to its claims handlers; and
>
> (d) refused to produce any documents sent to, received by, or created by its legal department in connection with the administration of Plaintiff's claim.

52. The disability claim file produced omits numerous records, particularly those involving correspondence exchanged with outside parties and notes generated during the course of its claims administration (such as those taken by its medical reviewers when talking with Plaintiff's medical providers).

53. In administering the disability claim, Defendants have committed numerous breaches and error including the following:

> (a) Targeting Plaintiff's claim for denial when it was learned her claim

11

was governed by ERISA;

(b) Failing to take any meaningful measures to insulate the claims personnel who handled Plaintiff's claim from Defendants' inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence these persons to engineer the termination and closure of Plaintiff's claim;

(c) Withholding numerous relevant documents and information from Plaintiff during the claims process;

(d) Depriving Plaintiff of the ability to obtain a full and fair review of the claim;

(e) Taking an adversarial posture against Plaintiff instead of a fiduciary posture by openly searching for ways to avoid paying part or all of her claim;

(f) Failing to accord any weight at all to Plaintiff's medical providers and instead relying on error-prone and inattentive "paper reviewers" to determine the medical cause of Plaintiff's overall disability;

(g) Purposefully limiting and curtailing the review of medical consultants and otherwise improperly exerting influence on them to opine against payment of benefits;

(h) Purposefully and persistently misleading Plaintiff into believing Plaintiff did not need to submit any additional medical

12

documentation in support of the claim and otherwise refusing to tell Plaintiff what was needed to provide before the claim could be perfected and paid;

(i) Unreasonably and arbitrarily overruling all of the professionals who personally examined Plaintiff or allowing any of them the opportunity to "peer review" Defendants' reviewers after Plaintiff completed the appeal (essentially conducting a one-way medical review process);

(j) Failing to give Plaintiff's claim a full co-morbid review and give any consideration to how Plaintiff's conditions impacted one another; and

(k) Conducting a new review on appeal creating new "evidence" to which Plaintiff had no opportunity to respond administratively.

54. Despite Plaintiff's established disability under the terms of the Plan taking into account her condition as a whole and her physicians' submission of medical records supporting such, the Unum claims team here determined that Plaintiff was capable of working.

55. As set forth above in connection with Defendants' fiduciary breaches, their claims decision was the product of a conflict of interest whereby the claims personnel assigned to Plaintiff allowed the financial interests of Unum to supersede their fiduciary obligations to Plaintiff. Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their claims decision.

56. Defendants considered the applicability of ERISA before making its decision. This presents an additional reason for application of a *de novo* standard to their claims decision.

57. Defendants failed to provide Plaintiff with a meaningful opportunity for a full and fair review of her claims for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1. Among other things, they subjected Plaintiff to a secret second determination when they refused to provide new information upon which they relied in considering Plaintiff's appeal.

58. Defendants refused to provide Plaintiff with relevant documentation concerning the Plan and the claim generally which controlled how the claim was administered.

59. Defendants' decision process in this matter did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor Regulations.

60. Plaintiff has exhausted all Plan remedies. As such, this case is ripe for determination.

## COUNT I
## RELIEF UNDER 29 U.S.C. § 1132(a)

61. Plaintiff adopts and incorporates all of the paragraphs above as though fully set forth herein.

62. The Plan is deemed "employee welfare benefit plan" and/or "employee pension plan" as those terms are defined in 29 U.S.C. § 1001, et. seq.

63. Plaintiff is a "participant" and a "beneficiary" in the employee welfare benefit and/or pension plan as those terms are defined under 29 U.S.C. § 1001, et. seq.

64. Plaintiff is disabled under the terms of the employee welfare benefit plan as to long term disability benefits and life waiver of premium benefits.

65. Defendants' termination of the Plaintiff's benefits was not and is not supported by substantial evidence.

66. Defendants denied Plaintiff's benefits to which she was entitled under the terms of the employee welfare benefit plan/insurance policy or policies by refusing to provide or discontinuing payment of benefits.

67. The decision making process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with the Department of Labor Regulations.

68. The decision making process did not provide a reasonable opportunity to Plaintiff for a full and fair review of the decision denying the claim, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

69. The appellate procedures did not provide Plaintiff with a full and fair review.

70. Defendants' actions were unreasonable and/or arbitrary and capricious and in violation of the terms of the employee welfare benefit plan/insurance policy.

71. Unum's claims process and claims decisions were tainted by conflict of interest which motivated claims personnel to deny Plaintiff's claim.

72. As a direct and proximate result of the conduct of Defendants in failing to provide benefits for Plaintiff's disability and/or terminating benefits, and in failing to provide a full and fair review of the decision to deny benefits and/or terminate benefits, Plaintiff has been damaged in the amount equal to an amount of benefits to which Plaintiff would have been entitled under the Plan, in an amount equal to future benefits payable while Plaintiff remains disabled under the terms of the Plan, and additional damages to be proven in the trial of this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Deborah Johnson-Gerry, respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant her the following relief:

a. Award Plaintiff past benefits due and payable under the terms of the employee welfare benefit plan/insurance policy(ies) pursuant to 29 U.S.C. § 1132(a)(1);

b. Enter a declaratory judgment as to Plaintiff's entitlement to future benefits and an appropriate order directing Defendants to pay all similar claims of Plaintiff in the future pursuant to 29 U.S.C. § 1132(a)(1);

c. Should Defendants voluntarily pay all past due benefits, enter a declaratory judgment as to Plaintiff's entitlement to future benefits, along with entering an appropriate order directing Defendants to pay similar claims to Plaintiff in the future, or in the alternative, for the Court to

16
Case 1:17-cv-00016-HSM-CHS   Document 1   Filed 01/13/17   Page 16 of 18   PageID #: 16

remove Defendants from their fiduciary roles in the administration of the Plan, and to appoint a special master to substitute for this Defendant with the special master having the authority to make all determinations as to Plaintiff's entitlement to future benefits;

d. For a judgment against Defendants awarding Plaintiff prejudgment interest, costs and expenses, including the reasonable attorneys' fee as permitted under 29 U.S.C. § 1132(g)(1);

e. For an order enjoining Defendants from further breaches of fiduciary or co-fiduciary duties, and direct that Defendants exercise reasonable care, skill, prudence, and diligence in the administration of Plaintiff's claim;

f. For an order finding Defendants jointly and severally liable for the breaches described herein;

g. For an order requiring Defendants to provide Plaintiff with any additional benefits to which Plaintiff would be entitled pursuant to a finding that Plaintiff is disabled under the Plan(s);

h. For an order finding Defendants liable for breach of fiduciary duty; and

i. Such other relief as may be deemed just and proper.

Respectfully submitted,

/s/  *Thomas O. Sinclair*

Thomas O. Sinclair
Sinclair Law Firm, LLC
2100-A SouthBridge Parkway
Suite 336
Birmingham, AL 35209
T:  205.868.0818
F:  205.868.0894
E:  tsinclair@sinclairlawfirm.com

Hudson T. Ellis
Eric Buchanan & Associates
414 McCallie Avenue
Chattanooga, TN 37402
T:  423.634.2506
F:  423.634.2505
E:  ellish@buchanandisability.com

**ATTORNEYS FOR PLAINTIFF**